## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In Re:

Donald Andrew Driggs,

Debtor.

BKY No. 13-42355
Chapter 11 Case

---

## DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

**Joseph W. Dicker**
Attorney ID #158264
JOSEPH W. DICKER, P.A.
Suite 209
1406 West Lake Street
Minneapolis, MN  55408
Telephone:  (612) 827-5941

Attorney for Debtor,
Donald Andrew Driggs

## 1.      INTRODUCTION AND PRELIMINARY MATTERS

This Third Amended Disclosure Statement dated April 23, 2014 (the "Disclosure Statement"), is submitted by Donald Andrew Driggs ("Debtor").  The Disclosure Statement contains information about the Debtor and describes the Debtor's Third Modified Plan of Reorganization dated April 231, 2014 and filed by the Debtor on April 23, 2014 (the "Plan").  A full copy of the Plan is attached to this Disclosure Statement as Exhibit 1.  The Debtor is seeking confirmation of the Plan.  The Disclosure Statement is intended to provide you with adequate information to enable you to make an informed decision on whether to vote for or against the Plan.

The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on May 8, 2013 with the intention of reorganizing his debts.  The Plan is intended to implement the Debtor's reorganization of his business and finances.  The Plan provides for the reorganization of the Debtor's business and the satisfaction of the claims of all creditors.   The Debtor believes that the Plan complies with all of the requirements of the Bankruptcy Code and that it should be confirmed by the Court.

## Purpose of This Document

This Disclosure Statement is provided to creditors to provide them with information relevant to the Plan and to enable creditors to make informed decisions concerning their vote on the Plan.  Parts of the Plan are incorporated into this Disclosure Statement, and a copy of the Plan is included in this voting packet.  Capitalized terms used in this Disclosure Statement shall have the meanings ascribed to them in the Plan or in the Bankruptcy Code unless the context requires otherwise.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

The court has entered an order setting the date of the hearing on confirmation of the Plan, and establishing the deadline for the submission of ballots casting votes for or against the Plan.  A copy of the order is included in the materials accompanying this Disclosure Statement.  You may vote for the Plan by completing the enclosed ballot and mailing it to the Clerk of the United States Bankruptcy Court, 300 South Fourth Street, Minneapolis, MN 55415.  Ballots that are not submitted timely will not be counted.   At the confirmation hearing the Court will determine whether a sufficient number of creditors have accepted the Plan, and whether to confirm the Plan.

Section 1129 (a) of the Code imposes certain conditions for the confirmation of a plan of reorganization.  These conditions include the requirement that all classes of claims and interests have accepted the plan or are not impaired.  Section 1129 also establishes the number and dollar amount of claims that must vote in favor of a plan in order for a class to have accepted the plan.  In the event that one or more classes rejects the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan affords fair and equitable treatment to the class rejecting it.  This means that, pursuant to 11 U.S.C. §1129(b), the Plan may be confirmed even if a class of claims or interests rejects it so long as the Plan provides that (1) each holder of a claim or interest

in the rejecting class receives the value of that claim or interest; or (2) no longer of a claim or interest junior to those held by members of the rejecting class will receive or retain value under the Plan. **The Debtor reserves the right to seek confirmation under 11 U.S.C. §1129(b).** (These statements are intended only to briefly summarize the requirements for confirmation that are established in Section 1129.  The proponent of a plan must meet all of the applicable conditions set forth in this section of the Code in order to obtain confirmation of a plan of reorganization.  These statements do not address all of the applicable conditions and criteria for confirmation; and creditors are urged to consult with their counsel and advisors, and to review the applicable provisions of the Code independently.)

Debtor's Disclosure Statement is furnished pursuant to Section 1125 of the Bankruptcy Code and is furnished to provide all persons known to have claims against Debtor with sufficient information to permit them to make an informed judgment as to their votes on whether to accept or reject the Plan.  No representations concerning the Debtor, particularly as to its future business operations, the value of its property or the value of any notes to be issued under the Plan, other than those set forth in this Disclosure Statement, are authorized by the Debtor.  ANY REPRESENTATION OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR OR TO THE UNITED STATES TRUSTEE, WHO, IN TURN, SHALL DELIVER THIS INFORMATION TO THE BANKRUTPCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

The financial information contained in this Disclosure Statement has been provided by the Debtor but has not been independently reviewed or audited.  All statements concerning financial data are made in good faith and are intended to be as complete and as accurate as possible within these limitations.  Neither the Debtor nor its counsel are aware of any inaccuracies.

### Deadline for Objecting to the Confirmation of the Plan

The court order approving this Disclosure Statement sets a deadline for objections.  Objections to the confirmation of the Plan must be filed with the Court and served upon Debtor's Counsel, Joseph W. Dicker, Esq., 1406 W. Lake Street, Suite 209 Minneapolis, MN 55408, and other parties in interest by the appropriate deadline and in accordance with the Applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Minnesota.  Generally, objections must be served and filed electronically through the CM/ECF system.

**Contact for More Information**

If you want additional information about the Plan, you may contact, the Debtor's attorney, Joseph W. Dicker, 1406 W. Lake Street., Suite 209 Minneapolis, MN 55408; telephone:  612-827-5941; email: joe@joedickerlaw.com.

## 2.  DEFINITIONS

The definitions set forth in the Plan are used in this Disclosure Statement.

## 3.  NATURE AND HISTORY OF THE DEBTOR'S BUSINESS

The Debtor is and has been engaged in the real estate business for more than 20 years.  . The Debtor worked as a small independent real estate broker and that was the primary source of his income; and in recent years as a real estate investor, buying, owning and operating real estate properties.  Beginning in 1989, Mr. Driggs started buying properties to hold for long term investment.  Mr. Driggs' focus was on the Uptown neighborhood of Minneapolis, Minnesota, near Lake Calhoun and in the near western suburbs.  Since 1989, over time, the Debtor acquired a number of different properties including:  the Suburban World Theater two four-unit residential properties, a single family home and three properties on Lake Minnetonka.  As of the commencement of this chapter 11 case, the Debtor owned 5 properties.  These are a 4-unit apartment building located at 3245 Hennepin Avenue in Minneapolis ("3245 Hennepin"), a 3-unit apartment  building located at 3990 Sunset Drive in Spring Park (3990 Sunset"); a  single family home located at 2925 Casco Point Road in Wayzata, ("2925 Casco"); a single family house located at 29317 145Th Street in Belgrade, Minnesota ("29317 145th "), and property located at 4400 Deering Island on Lake Minnetonka ("4400 Deering").   In addition the Debtor owned a property located at 3201 Hennepin Avenue in Minneapolis ("3201 Hennepin").  However 3201 Hennepin was subject to mortgage foreclosure proceedings. The foreclosure sale had been conducted.  The Debtor only held the equity of redemption for 3201 Hennepin.  The redemption period provided under state law has expired and as a result the Debtor no longer has any rights or interests in 3201 Hennepin.

## 4.    CIRCUMSTANCES LEADING TO THE BANKRUPTCY FILING

In recent years, the Debtor's primary focus has been on the ownership, improving and operating his various real estate assets.

In 2008 the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code.  That chapter 11 reorganization case was pending under Court File No. BKY 08-41984.  Although the Debtor was able to confirm a plan of reorganization in the prior case, that case was ultimately dismissed on June 19, 2012.

The Debtor continued to have disputes with the existing lenders and was unable to obtain additional financing.  The Debtor has been beset by several casualty losses.  Fires at two properties caused substantial damage.  These properties required major restoration.

The Debtor had various disputes with his lenders.  See, detailed discussion in Section 18 - Litigation Matters below.

This case was most immediately commenced to stop a foreclosure against one of the Debtor's property.   Faced with the imminent loss of his most essential properties, the Debtor filed the petition for relief commencing this chapter 11 case.   Mr. Driggs filed with intention of protecting his assets, to prevent the loss of assets so that he could restore and rehabilitate all of his properties, return them to productive use, and reorganize his debts.

## 5.  OPERATIONS DURING THE BANKRUPTCY CASE

### Debtor's Assets

As of the commencement of this case, the Debtor owned five properties that were generally in severely damaged condition and were in the process of being renovated or rehabilitated.  The descriptions of the properties and the estimated fair market values are set forth in the following table.

| Property Address | Description | Estimated Fair Market Value | Estimated Liquidation Value | Status of Property |
|---|---|---|---|---|
| 3245 Hennepin | 4-unit apartment building | $140,500 | $95,000<br><br>Demo costs $70K escrowed with City of Minneapolis | Sustained substantial fire damage. Damages estimated at $680,000, insurance claim was paid out at $500,000, of which $400,000 has been expended in the restoration. Restoration is approximately 70% complete. New roof has been added. Restoration is anticipated to |

| | | | | |
|---|---|---|---|---|
| | | | | be complete by May 31, 2014. |
| 3990 Sunset | 3 – unit apartment building | $425,000 | $325,000 | Apt 1 is leased for $750.  Apt 2 was recently leased for $895. The third unit is ready for leasing and is being marketed at $1,295 |
| 2925 Casco | Single family home | $417,000 | $332,000 | Sustained substantial fire damages. Damages estimated at $165,000. Insurer allowed a claim of $48,000.  All restoration has been completed. Property then sustained water damage which have also been repaired. Property will be available for leasing by May 1, 2014, and is already being marketed. |
| 29317 145th | Single family house | $60,000 | $25,000 | Property sustained substantial flood damage and was vacant for almost two years.  The property has been restored, and is now leased |

| 4400 Deering | Private island on Lake Minnetonka in the West Arm Bay, approx. 3 acres, with a turn of the last century home. | $490,000 | $425,000 | Kitchen and Bathroom updated and property setup for vacation rental. |
|---|---|---|---|---|

## Bases for Valuation

The Debtor has set values for each of the properties, the present value was determined on the date of the commencement of this case.  The Debtor has obtained market valuations from an experienced realtor, acquainted with the local markets, The Debtor believes that these market valuations are accurate and fairly reflect the value of each of his properties as of the commencement of the case.  The market valuations are consistent with the Debtor's opinions as to the values of the properties and his own investigations concerning current real estate market conditions.    The comparable properties used to arrive at values as well as appraisals are available by contacting the Debtor's attorney.

The Plan contemplates that the secured claims of all creditors holding mortgages on these properties will be reduced to the current value of the respective property in accordance with Section 506 of the Code.  If any secured creditor disputes the amount of the value the Debtor ascribes to each property, the Debtor will move the court to determine the amount of the secured claims in accordance with Section 506 of the Code.

The Debtor is an experienced real estate professional and has been a realtor, broker for his own benefit.  The values ascribed above reflect the Debtor's opinion of value based on his extensive experience.  In addition, the Debtor has obtained market valuations from realtors.  The values ascribed are consistent with the market values.  These market valuations and recent tax statements are attached as Exhibit 2.1, 2.2, 2.3, 2.4 and 2.5.

The present value of the 3245 Hennepin property is based on the value of the property as of the commencement of the case.  That property sustained extensive damage pre-petition and has been under construction.  Currently 3245 Hennepin remains under construction. The renovation of the property has been funded by insurance proceeds, and the work has been undertaken by the debtor through one of his business entities.   The valuation of this property is based on its current condition.  Initially after the fire the City of Minneapolis appraised the property at $125,000.  After the Debtor spent $374,000, (in connection with the restoration process) the City of Minneapolis has only increased the value of 3245 Hennepin to $140,500.  The $374,000 that was spent brought the property to 61% complete.  Unfortunately the money spent does not increase the present value of the property because the project is not complete.  In the event that the second phase of construction is not completed the City of Minneapolis is holding $70,000 for demolition cost.

 As of the date of this Disclosure Statement, the Debtor understands that the secured creditors holding mortgages on the Debtor's real estate properties.  If the Debtor is unable to reach agreements with the secured creditors with respect to the valuations of each of the properties, the Debtor anticipates that confirmation of the Plan will be contested.   If so, the Debtor anticipates that the valuation of the properties and the concomitant plan treatment will be core issues that will have to be litigated in a contested confirmation hearing, or separate hearing on valuation.

## Operations, Generally

Multiple catastrophic events led up to the Debtor filing for Chapter 11 Bankruptcy.  These events include; fires, flooding, and severe hail and wind storms that damaged the properties.  During this time income was minimal to none.

After filing the petition the Debtor put together a plan of reorganization.   Updates and renovations have been completed on four of the five properties and the last property, 3245 Hennepin, was inspected by the lender at 61% complete.  Since the inspection the Debtor has put a new roof on 3245 Hennepin including 8 skylights, new permits have been pulled, and the City of Minneapolis has paid out an additional $30,000 from the amount escrowed.  The Debtor has sufficient funds available to complete the work and once that is done all work will be completed.  The building will be fully rented.

The Debtor's main business activity has been making the repairs, restorations and renovations necessary to get his properties in condition to rent.  The Debtor's goal has been to complete this work as quickly as possible so that the properties could be put into productive use.  The following table summarizes the status of each property:

| Property | Status |
|----------|--------|
| 3990 Sunset | Fully Rented |
| 3245 Hennepin | Restoration in process.  70% Complete Completion date: May 31, 2014. Anticipated full rental date: June 30, 2014 |
| 2925 Casco | Restoration completed.  Anticipated fully rented by May 31, 2014. |
| 29317 145th | Fully rented. |
| 4400 Deering | Kitchen and Bath updated and property setup for vacation rental. |

Because of the condition of the properties and the need for repairs and restoration, the Debtor has had limited rental income and no net operating income from rental activity during the case.

3990 Sunset, which is a tri-plex, is fully leased with the Debtor occupying unit 3. After the debtor makes improvements to this apartment he will lease it for $$1,295. Improvements scheduled are window replacement and upgrades to the heating system.

The Debtor leases 29317 145th St NE Belgrade Property was leased December 1st for $600 a month.

The Debtor was recently sued in connection with his efforts to lease 3990 Sunset. A prospective tenant completed a rental application and delivered a security deposit.. In the course of his review of the application, Mr. Driggs determined that there were unexplained gaps in the applicant's history; and the Debtor turned down the application. The applicant then commenced an action under Minnesota's "anti-lockout law" (Minn. Stat. § 504B.375). The Debtor has maintained that the applicant does not have a valid claim under this law. The relief afforded is available only to "residential tenants" and the Debtor has asserted that the applicant was not a residential tenant under the law and has no contractual right to claim a tenancy existed. The applicant has asserted that claim that she is entitled to possession of the subject premises and money damages. The Debtor stipulated to relief from stay in the bankruptcy case so that these issues could be decided in the state court (Hennepin County Housing Court). Although the Debtor is highly confident that he will prevail, the petitioner is seeking money damages, which if granted may be entitled to administrative priority. If the petitioner in state court prevails, that damage would have to be addressed under the Plan. Based on the procedural posture of the state court litigation, and the Debtor's evaluation of his risk, the Plan currently makes no specific provision for such claim, other than the general provisions with respect to administrative claims.

The Debtor has not entered into adequate protection or cash collateral agreements with its secured creditors. Since the time of filing there has been no cash collateral and the property values have been stable so that the Debtor has not made payments in order to provide adequate protection under 11 U.S.C. §§ 361, 362 and 364.

The Debtor filed a plan of reorganization and a disclosure statement on September 30, 2013. Several objections to the disclosure statement The Debtor subsequently engaged counsel. That plan and disclosure statement were withdrawn. The Debtor moves forward in this case based on the accompanying Plan.

## 6. GENERAL DESCRIPTION OF THE DEBT

The Debtor, generally, has two broad categories of debt: Secured debt which is secured by mortgages on his properties; and general unsecured debt. In addition, the IRS has filed a proof of claim. International Revenue Service has filed a proof of claim alleging a priority claim in the amount of $50,455.86. The Debtor believes there will be no tax liability.

In the event that there is a tax liability the Debtor agrees the amount will be paid in full 5 years following the filing of the Chapter 11 Bankruptcy on May 8th 2013. Payments will commence 30 days from the date of confirmation and will be divided into equal installments calculated on the number of months left from the date of confirmation to the end of the five year period May 2018.

The real estate secured debt is summarized in the following table.

| Property | Lender | Estimated Fair Market Value | Amount of Prepetition Secured Claim |
|---|---|---|---|
| 3245 Hennepin | NationStar | $140,500 | $462,570 |
| 3990 Sunset | Citibank | $425,000 | $691,492 |
| 2925 Casco | NationStar | $417,000 | $1,066,681 |
| 29317 145th | Wells Fargo | $60,000 | $131,295 |
| 4400 Deering* | Chase | $490,000 | $858,459 |

*Note: the certificate of title to 4400 Deering shows four other mortgages: State Bank of Delano for $1,244,000; St. Stephen State Bank for $150,000 and two in favor of Commerce Bank totaling $325,000. The Debtor maintains that these four encumbrances reflect satisfied debt and /or debts that are unenforceable. In any event, the property is worth less than the first mortgage held by Chase. Consequently, to the extent that any of these encumbrances are otherwise enforceable, they are effectively unsecured claims, and are treated as such under the Plan. In the event of any dispute over the unsecured status of these claims, the Debtor intends to object to the allowance of such claim or claims as secured claims, and will seek to have such claim or claims determined to be unsecured in accordance with Section 506 of the Code.

In addition to the real estate mortgages, the Debtor has a secured loan from his brother, Mr. A. J. Driggs. That loan was made in December, 2012 and is in the amount of $25,000, and carries interest at the rate of 6% and is secured by a pledge of various boats of the Debtor. The Debtor has the right to redeem the boat by repaying the principal and interest. The secured creditor has the right to demand payment on 60 days' notice.

The Debtor's general unsecured debt is in the approximate amount of $1,950,000. This debt includes claims for goods and services, and deficiency claims on formerly secured claims, and the unsecured portion of the current secured claims. This estimate includes the unsecured portion of the otherwise secured claims of approximately $1.8 million and approximately $150,000 of other pre-petition unsecured claims.

## 7. UNSECURED CREDITORS COMMITTEE

The Office of the United States Trustee was unable to find three unsecured creditors who were willing to serve on an Official Creditors' Committee, and consequently no committee was formed.

## 8.   STEPS TAKEN TO FACILITATE REORGANIZATION

The Debtor's efforts to restructure his business have focused on the repair, renovation and restoration of his properties.  That work is largely completed.  The Debtor intends to have all of his properties rented by mid-year.  Mr. Driggs anticipates that all of the rental units will be leased and that he will have a minimum of six rentals scheduled on Deering Island.

The Debtor has developed a business plan to use 4400 Deering as a vacation rental and for events.  Given its bucolic island setting on Lake Minnetonka, and its close proximity to Minneapolis and the southern and western suburbs make it an ideal site for these activities.  Updates have been completed on the cabin located on the Island and it is now setup to be used as a vacation property and rental.  The Debtor anticipates 10 weeks of rentals out of 20 available.

The Debtor has extensive experience in producing special events, organizing weddings, and all around event planning.  He will be using 4400 Deering Island for up to 6 events, which will produce a total income of $48,000.  3990 Sunset, while being operated as a tri-plex apartment rental, will be the access for any events held on 4400 Deering Island.  The shoreline access at 3990 Sunset is essential to provide access to dockage for 4400 Deering.

The Debtor previously owned the Suburban World Theatre; which he operated as a special events venue.  The Debtor has also operated music festivals.  The Debtor organizes and operated special events such as weddings, bar and bat mitzvahs, book signings, and financials seminars.

The Debtor intends to apply this experience to 4400 Deering.  The Debtor has updated the kitchen and bathroom, 4400 Deering will be operated as a vacation rental and events.  The Debtor anticipates average profit of $8,000 and expects to 6 events this following year totaling $48,000.  In addition, the Debtor intends to book the property for 10 weeks of rentals at an average of $2,600 per week which will produce $26,000.  Total income $26,000 plus $48,000 will equal $74,000.  Note the Debtor has rented the Island for 4 out of the 10 weeks.

The Debtor has previously booked one special event on the Island featuring 97 people and has successfully worked out the logistics for parking large groups of people, transportation to the access point which he owns, catering guests, and transportation to and from the Island for events.  The Debtor has received multiple inquiries for weddings,

special events, and proposals from local event planners.  Based on the updates completed
and the marketing efforts to date, the Debtor anticipates that 4400 Deering can be
profitably operated.

In his efforts to reorganize, the Debtor has expended substantial efforts on 3245
Hennepin.  That property sustained substantial fire damage on December 29, 2009 and a
claim was submitted to the insurance company immediately after.  The insurer considered
the building a total loss with an estimated loss of $532,500, paid out $399,375 to the
mortgage company and escrowed $133,125 with the City of Minneapolis.  Prior to the
bankruptcy roughly $370,000 worth of insurance claim money was paid out by the
mortgage company to rebuild the structure of the building and frame in the structure.
Since the filing date the City of Minneapolis paid out exactly $33,000.  In the fall of
2013, a new building permit was obtained and a new roof was put on the building.
Recently the City of Minneapolis has authorized the release of an additional $30,000 that
will be spent on the building.  All permits have been obtained and the project will be
completed by May 31, 2014, weather permitting.  In order to complete the restoration of
the building the following work has to be completed; exterior windows, HVAC,
electrical, plumbing, sheetrock and mudding, hardwood floors, and finish work.  The
insurer is State Farm.  The claim number is 23-L329-435.  There is approximately $9,000
remaining available from the insurer and $70,000 from the City of Minneapolis.

The 3245 Hennepin 4 unit is 70% complete.  Last fall a new building permit was
obtained and the City of Minneapolis released $33,000 and the roof, insulation, and
skylights were completed.  The building was inspected by the creditor and their
inspectors stated it was 61% complete.  The Debtor already completed renovations on all
the properties except 3245 Hennepin which is near completion and has obtained the funds
to complete the renovation as soon as they come to an agreement with the lender.

29317 145th sustained flood damage on November 22, 2010.  The entire basement was
demolished and all work was completed and inspected by the insurance company.  Work
was completed approximately in April 2013 with funds received from the insurer,
American Security Insurance Company.  The claim number is 0200464828.  The
repair/replacement cost was approximately $17,569.75

## 9.        TRANSACTIONS WITH INSIDERS

Mr. Driggs owns One-Mile Long, LLC. That entity performed general contractor services
for the Debtor.  This work was primarily the repair, restoration and renovation of the
Debtor's properties.  That work was funded by the proceeds of the insurance claims.   In
effect all of the Debtor's cash-flow during this case has been expended on fixing his
properties and has gone through One-Mile Long, LLC.

The following chart sets forth a summary of the financial transactions between One Mile
Long, LLC and the Debtor during the pendency of the case:

| **Income** | | | |
|---|---|---|---|
| | Insurance Proceeds | $225,614.75 | |
| | Misc/Refund | $1,735.69 | |
| | **Total** | **$227,350.44** | **$227,350.44** |
| | | | |
| **Expense** | | | |
| | **Business Expense** | | |
| | Contract Labor | $53,998.54 | |
| | Operations; materials, etc.. | $63,244.77 | |
| | **Personal Expense** | | |
| * | Debtor's Draws ($15,500 Checks, $441.29 Card) | $15,941.29 | |
| | Attorney's Fees | $12,000.00 | |
| | Bankruptcy Fees | $2,275.00 | |
| | Regal Taxes | $7,237.11 | |
| | **Total** | **$164,696.71** | **$164,696.71** |
| | | | |
| | | * | 62,653.73** |

*Debtor's Draws:  The Debtor wrote checks in weekly/monthly draws.  This is the actual amount that was spent for his living expenses including food and miscellaneous personal expenses since filing petition.

** Of the cash on hand of $62,653.73, $30,000 was received from the City of Minneapolis with respect to work performed on 3245 Hennepin; and the remaining balance of $32,653.73 is One Mile Long, LLC cash-flow from the services it has provided.   The Debtor has available approximately $9,000 remaining from the 3245 Hennepin insurance claim and approximately $70,000 held by the City of Minneapolis to complete the renovation of 3245 Hennepin..

## 10. GENERAL DESCRIPTION OF THE PLAN

The Bankruptcy Code requires that a Plan of Reorganization classify and provide for the treatment of claims.  The Plan provides for the description, classification and treatment of claims against the Debtor.   The Plan is premised upon the Debtor's ability to complete the restoration and development of his properties, and put them into fully productive operations in the near term.  The Debtor anticipates that the necessary repairs and renovations of all properties will be completed and the properties will be able to come "on line" by the third quarter of 2014.

The Plan is based in part on the premise that the secured claims will be reduced from amounts of the pre-petition debts owed to secured creditors based on the fairmarket value of the properties pledged as collateral.  Generally, Section 506 of the Code authorizes the

determination of the value of secured claims based on the value of the collateral as of the date of filing.  The Plan also reduces the rates of interest on the secured debts to 4.25%. The Debtor has based the interest rates proposed in the Plan on the requirements of *Till v. SCS Credit Corp.,* 541 U. S. 465 (2004).  The Plan provides for interest rates on real-estate secured debts (Classes 1, 2, 3, 4 and 5) at one percent (1%) over the prime rate of interest in effect at the time of the filing; which rate is intended to comply with the standards established in the *Till* decision, balancing an appropriate rate of interest, adjusted to reflect the fact of the reorganization case, while maintaining the viability of the reorganization case.

Under the Plan, the Debtor virtually is re-vested with title to all property.  The Plan is funded by the project income from operations.  This will include rental income from each of the rental properties and income from 4400 Deering.

## 11.    UNCLASSIFIED CLAIMS: DESCRIPTION AND TREATMENT

**(a)** Priority unsecured tax claims entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code include the claims of the United States Internal Revenue Service ("IRS") in the amount of $3,829.30 and the Minnesota Department of Revenue ("MDR")  in the amount of $2,225.48.  .  For the purposes of the Plan, these tax claims will include that portion of the IRS and MDR claims allowed by the court, if a timely objection is made by the Debtor.  .  These claims will be paid, in full on or before within five years of the date of filing, in equal quarterly payments including interest at the rate fixed by statute.  These payments will begin on the later of the last day of the first calendar quarter following the Effective Date, or, if a timely objection is filed, on  the last day of the first calendar quarter following the date on which the bankruptcy court enters an order allowing these claims and that order has become final and non-appealable. All allowed administrative taxes will be paid in full on the Effective Date.

If the Debtor, or the successor in interest fails to make any deposits of any currently accruing employment tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or successor in interest fails to file any required federal tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan.  Failure to declare a default does not constitute a waiver by the United States of the right to declare that the Debtor or successor in interest is in default.

If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor of the successor in interest.

If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.

All unpaid tax priority claims remain non-dischargeable debts after confirmation of the Plan.    The Debtor and all property of the Debtor remain liable for all unpaid tax priority claims after confirmation of the Plan.

The discharge granted by Section 1141 (d) of the Code is modified as to the tax debt under the Plan, and the discharge of any tax debt under the Plan shall not be effective until all taxes provided for under the Plan have been paid in full.

**(b)**  Administrative expenses entitled to priority pursuant to §503(d)(2) or §503(a) of the Bankruptcy Code excluding any claims included in any other class under the Plan. These claims include attorneys' fees for the Debtor's attorneys as may be approved and awarded by the Court pursuant to §330(a) of the Code.  The Debtor estimates administrative priority claims for professional persons will be approximately $20,000, as of the date of confirmation.  Allowed administrative expenses entitled to priority pursuant to §503(d)(2) of the Code shall be paid in full to the extent allowed by the Court, on the Effective Date, from the Debtor's operating revenues, and from advance retainers paid by the Debtor.

**(c)**  Administrative claims entitled to priority pursuant to §503(b) (1) of the Code, including trade payables.  Debtor estimates that there will be less than $1,000 of current trade payables due and owing, which would be entitled to priority under §503(b)(1).  All such claims shall be paid on the Effective Date or when they come due in the ordinary course of business, whichever is later.

**(d)**  United States Trustee fees and other court costs and fees assessed, or accessible pursuant to 28 U.S.C. §1930(a) and (b).  The Debtor estimates that unpaid Trustee fees, court fees, and other fees assessable pursuant to these provisions, will be less than $1,500 as of the date of confirmation.  All such fees and expenses will be paid on the Effective Date from Debtor's income.   Debtor shall continue to pay those fees authorized and assessed or otherwise payable in accordance with 28 U. S. C. § 1930, following confirmation until such time as this Chapter 11 case is closed, dismissed or converted. After confirmation of the Plan, the Debtor shall submit quarterly operating reports to the United States Trustee each quarter (or portion thereof) until this Chapter 11 case is closed, dismissed or converted.  These reports shall be in the format prescribed by the United States Trustee.

## 12.    CLASSIFIED CLAIMS: DESCRIPTION AND TREATMENT

**(a)**    **Class 1:**    **Secured Claim of Citimortgage Loan Services.**    Class 1 consists of the secured claim of Citimortgage Loan Services ("Citimortgage"), arising under a note dated January 29, 2003 in the original principal amount of

$560,000, which is secured by a first mortgage lien on and security interest in the Debtor's 3990 Sunset property.   As of the date of filing, the balance due to Citimortgage was approximately $689,000.  The real property securing this debt has a fair market value as of the date of filing of $425,000.  The Debtor will issue an Amended Note in the amount of $425,000 providing for interest at the rate of 4.25%.  The Amended Note will mature on January 29, 2033.  Payments will be made in the amount of $2,091 with a balloon payment due and payable on the maturity date.

**(b)**    **Class 2:**    **Secured Claim of Nationstar Mortgage.**    Class 2 consists of the secured claim of Nationstar Mortgage ("Nationstar"), arising under a note dated November 22, 2004 in the original principal amount of $481,300, which is secured by a first mortgage lien on and security interest in the Debtor's 3245 Hennepin Avenue property.   As of the date of filing, the balance due to Nationstar was approximately $462,570.  The real property securing this debt has a fair market value as of the date of filing of $125,000.  The Debtor will issue an Amended Note in the amount of $140,500 providing for interest at the rate of 4.25%.  The Amended Note will mature on November 22, 2034.  Payments will be made in the amount of $691, with balloon payment due and payable on the maturity date.

**(c)**    **Class 3:**    **Secured Claim of Nationstar Mortgage.**    Class 3 consists of the secured claim of Nationstar Mortgage ("Nationstar"), arising under a note dated March 16, 2006 in the original principal amount of $910,000, which is secured by a first mortgage lien on and security interest in the Debtor's 2925 Casco Point Road property.   As of the date of filing, the balance due to Nationstar was approximately $766,646.  The real property securing this debt has a fair market value as of the date of filing of $417,000.  The Debtor will issue an Amended Note in the amount of $417,000 providing for interest at the rate of 4.25%.  The Amended Note will mature on March 16, 2036.  Payments will be made in the amount of $2,051, with a balloon payment due and payable on the maturity date.

**(d)**    **Class 4:**    **Secured Claim of Wells Fargo Bank.**    Class 4 consists of the secured claim of Wells Fargo Bank ("Wells Fargo"), arising under a note dated December 19, 2002 in the original principal amount of $100,000, which is secured by a first mortgage lien on and security interest in the Debtor's 29317 – 145th Street property.   As of the date of filing, the balance due to Wells Fargo was approximately $131,295.31.  The real property securing this debt has a fair market value as of the date of filing of $60,000.  The Debtor will issue an Amended Note in the amount of $60,000 providing for interest at the rate of 4.25%.  The Amended Note will mature on December 19, 2032.  Payments will be made in the amount of $296, with a balloon payment due and payable on the maturity date.

(e)     **Class 5:         Secured Claim of Chase Manhattan Mortgage Corporation,
now known as Chase Home Finance, LLC.**  Class 5 consists of the secured
claim of Chase Manhattan Mortgage Corporation, now known as Chase Home
Finance, LLC ("Chase"), arising under a note dated March 20, 2003 in the
original principal amount of $646,500, which is secured by a first mortgage lien
on and security interest in the Debtor's 4400 Deering Island property.   As of the
date of filing, the balance due to Chase was approximately $815,000.  The real
property securing this debt has a fair market value as of the date of filing of
$490,000.  The Debtor will issue an Amended Note in the amount of $490,000
providing for interest at the rate of 4.25%.  The Amended Note will mature on
March 20, 2033.  Payments will be made in the amount of $2,411, with a balloon
payment due and payable on the maturity date.

(f)     **Class 6:         Secured Claim of First National Bank of the Lakes.**  Class 6
consists of the secured claim of First National Bank of the Lakes ("FNBL"),
arising under lien upon and security interest in a boat and trailer.   As of the date
of filing, the balance due to FNBL was approximately $5,631.45.   The boat and
trailer securing this debt has a fair market value as of the date of filing of $6,500.
The Debtor will reinstate FNBL's note.  Payments will be made in the amount of
$200 per month, over a period of two years, with a balloon due at the end of two
years.  FNBL's note is treated as fully secured.

(g)     **Class 7:         General Unsecured Claims.**  Class 7 Unsecured Claims consists
of all pre-petition, unclassified non-priority claims including the unsecured non-
priority portion of any tax claim (if any), and the unsecured portion of any
otherwise secured claims where the claim has been reduced to the current market
value of the property in accordance with 11 U.S.C. § 506.  The amount of
prepetition unsecured claims is estimated to be $1,950,000.  Holders of Class 7
will receive distributions totaling $50,000. The Debtor will make quarterly
distributions of $1,800 for 27 calendar quarters with a final distribution of $1,400
made on the last day of the 28 calendar quarter.   Quarterly distributions will begin
on the last day of the first full calendar quarter following the Effective Date., and
will continue to be made on the last day of each succeeding calendar quarter until
all required distributions have been made and the full payment of $50,000 has
been distributed.  All quarterly distributions will be prorated to holders of Class 7
Claims; with the proration based on the ratio that each holder's claim bears top
the total amount of allowed Class 7 Claims.  The Debtor may pre-pay the amounts
due to the holders of Class 7 Claims in whole or in part, at any time, in his
discretion.  If the Debtor pursues any pre-petition litigation claim, and prevails
and recovers any financial, any such financial award (net of litigation fees and
costs) shall be distributed to holders of Class 7 Claims as an additional
extraordinary distribution.

(h)     **Class 8:  Secured Claim of A. J. Driggs**.  Class 8 consists of the secured claims
of A. J. Driggs, in the amount of $25,000, and secured by boats.  The Debtor will
redeem the collateral by paying the debt in full when he is able.   The holder of

Class 8 Claims will continue to have the right to demand payment on 60 days written notice.

## 13.  IMPAIRED AND UNIMPAIRED CLASSES

Classes 1, 2, 3, 4, 5, 6 and 7 are impaired.  Class 8 is unimpaired.

## 14. MEANS OF EXECUTION OF THE PLAN

On the Effective Date, the Debtor shall be re-vested with title to all property of the bankruptcy estate herein.  The Debtor shall continue to operate its business in the ordinary course.  All distributions and payments made under the Plan shall be funded form the Debtor's earnings.

The Debtor shall issue restated and amended notes to holders of Class 1 through 6 inclusive.  The security interests and liens held by holders of Class 1 through 6, inclusive, and Class 8 shall retain the same dignity, priority and extent as afforded pre-petition of the liens or security interests asserted by the holder of each such claim.

## 15.     MANAGEMENT FOLLOWING CONFIRMATION

The Debtor does not anticipate any changes in management following confirmation. The Debtor will continue to own and operate his properties.  The Debtor may use one or more entities owned by him to provide on-going contractor and management services.

## 16.     EXECUTORY CONTRACTS

As of the commencement of the case, the Debtor had no outstanding pre-petition executory contracts.

## 17.     POST CONFIRMATION ADMINISTRATIVE MATTERS

Fees payable by the by Debtor under 28 USC § 1930 shall be paid in full on the Effective Date and thereafter and when due until the Chapter 11 case is closed, dismissed or converted.  After confirmation of the Plan, the Debtor shall submit quarterly operating reports to the United States Trustee each quarter (or portion thereof) until this Chapter 11 case is closed, dismissed or converted.  These reports shall be in the format prescribed by the United States Trustee.

## 18.   LITIGATION MATTERS

The Debtor has identified possible causes of action against various third parties.  These include:

***Claims against Commerce Bank.***  In 2007, the Debtor established a credit facility with Commerce Bank.  The Debtor drew on the credit facility and purchased a cashier's check from another bank.  Subsequently, Mr. Driggs maintains without cause or justification, Commerce Bank cancelled the check.  Mr. Driggs maintains that such actions were wrongful and actionable, and that he sustained substantial damages as a result of the bank's actions.  The Debtor has also maintained that Commerce Bank foreclosed on two of the Debtor's (former) properties relying on allegedly defective voluntary foreclosure agreement.

***Claims against Wells Fargo Bank.***  The Debtor maintains that Wells Fargo Bank used an correct address in documenting its loans with the Debtor.   The Debtor maintains that as a result of the error, the Debtor was double-billed and suffered other damages.

***Claims against Heritage Bank.***   Heritage Bank obtained relief from stay in the Debtor's prior Chapter 11 case and foreclosed against one of the Debtor's properties.  The Debtor has maintained that the foreclosure was conducted in bad faith, and is actionable.

These claims have not been independently evaluated by legal counsel.  As of the date of this Amended Disclosure Statement, the Debtor has not made final decisions as to whether or not to pursue such claims.  The Debtor reserves the right to pursue all or any of these potential claims following confirmation of the Plan, as well as any other claims that have not yet been identified.  Failure to list a potential litigation claim in this Disclosure Statement is not intended to constitute a waiver, release or discharge of any potential claim that the Debtor may in fact hold.  The Debtor further reserves the right to settle or compromise any possible claims based on his discretion.  The Debtor will take into account what he believes to be the merits of each claim, the advice of counsel with respect to the likelihood of success of prevailing and the likely costs of litigation.

## 19. CLAIMS LITIGATION

The Debtor reserves the right to object to the allowance of claims following confirmation of the Plan based upon any proper legal or equitable theory, doctrine or principle, including without limitation, that a claim may be barred by any applicable statute of limitations, or that a claim was tardily filed.   The Debtor may object to the amount of any claim and or to the secured status of any secured claim, in whole or in part.

## 20. ALTERNATIVES TO THE PLAN

The Debtor believes confirmation of the plan is in the best interest of the creditors and himself, and that he has pursued every possible alternative to the proposed Plan. The

Debtor firmly believes that reorganization under Chapter 11 is preferable to dismissal or to liquidation.

The Debtor believes that general unsecured creditors and priority claimants would receive no recovery on liquidation.  On the other hand, the Debtor anticipates one hundred percent recovery on account of secured, and a modest recovery on account of general unsecured claims under the Plan.

All of the Debtor's assets are subject to secured claims.  The Debtor believes that on a forced liquidation basis all of his secured assets are worth less than the debts owed to the secured creditor and that there would be no net recovery in excess of the debt that would be distributable to unsecured creditors. Based on this assumption, there would be substantial deficiencies on the secured debt and no funds available to pay unsecured claims.

The following table sets forth the Debtor's liquidation analysis.

| Asset | Exempt | Secured | Estimated Liquidation Value | Estimated Fair Market Value | Amount of Prepetition Secured Claim | Net Available For Unsecured Creditors |
|---|---|---|---|---|---|---|
| 3245 Hennepin | No | Yes (Class 2) | $95,000 | $125,000 | $462,570 | $0 |
| 3990 Sunset | | Yes (Class 1) | $325,000 | $425,000 | $691,492 | $0 |
| 2925 Casco | | Yes (Class 3) | $332,000 | $417,000 | $1,066,681 | $0 |
| 29317 145th | No | Yes (Class 4) | $25,000 | $60,000 | $131,295 | $0 |
| 4400 Deering | No | Yes (Class 5) | $425,000 | $490,000 | $858,459 | $0 |
| Vehicles | Yes | No | $4,000 | $6,300 | n/a | $0 |
| *Boats & Trailers:* | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Donzi 1988 + 2 trailers (Class 6) | No | Yes | $4,500 | $6,000 | $5,800 | $0 |
| Larson 1938 + trailer | | Yes (Class 8) | $10,000 | $10,000 | $25,000 | $10,000 |
| Larson 1957 | No | Yes (Class 8) | $200 | $200 | $25,000 | $200 |
| Larson 1957 | No | Yes (Class 8) | $200 | $200 | $25,000 | $200 |
| 1955 Larson + trailer | No | Yes (Class 8) | $500 | $500 | $25,000 | $500 |
| Aristo Craft + trailer | No | No Yes (Class 8) | No | $100 | $25,000 | $100 |
| Swedish launch | No | Yes (Class 8) | $2,500 | $2,500 | $25,000 | $2,500 |
| 1940 Hydro plane | No | Yes (Class 8) | $400 | $400 | $25,00 | $400 |
| 1940 Hydroplane | No | Yes (Class 8) | $400 | $400 | $25,000 | $400 |
| Boston Whaler + trailer | No | Yes (Class 8) | $6,500 | $6,500 | $25,000 | $6,500 |
| Pontoon boat + trailer | No | Yes (Class 8) | $500 | $500 | $25,000 | $500 |
| 12' aluminum boat | No | Yes (Class 8) | $200 | $200 | $25,000 | $200 |
| 14' aluminum boat | No | NoYes (Class 8) | $100 | $100 | $25,000 | $100 |
| Canoe | No | Yes (Class 8) | $100 | $100 | $25,000 | $100 |
| 21' Larson Wood+ trailer | No | Yes (Class 8) | $10,000 | $10,000 | $25,000 | $10,000 |
| 17' Larson – wood | No | Yes (Class 8) | $600 | $600 | $25,000 | $600 |
| 14' fiberglass red/white | No | Yes (Class 8) | $50 | $50 | $25,000 | $50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 14'" fiberglass Black/white | No | Yes (Class 8) | $50 | $50 | $25,000 | $50 |
| 6 outboard motors | No | Yes (Class 8) | $50 | $50 | $25,000 | $50 |
| Household Goods & Personal Effects | Yes | No | $0 | $5,000 | _ | $0 |
| Black Lake, LLC | No | No | $0 | $50,000 | - | $0 |
| One Mile Long, LLC | No | No | $0 | $1,000 | - | $0 |
| Great Regal Management | No | No | $0 | $0 | - | $0 |

The liquidation values stated in the foregoing table have been determined by the Debtor. They have not been reviewed or audited; nor are they predicated upon specific expert opinions. With respect to the real estate properties, the liquidation values are based in large measure on the market valuations obtained by the Debtor, adjusted for estimated liquidation costs and sales commissions, and an adjustment for the property being sold in a distressed, post-foreclosure mode.

The debtor believes that the plan is feasible. The adjusted loan balances reflect the current fair market value of the Debtor's assets. The Debtor believes that it can achieve sufficient income to meet its obligations under the Plan

The Debtor believes that the Plan is feasible and realistic. The Debtor has prepared projections which demonstrate the Debtor's anticipated income and expenses from his business over the initial 5 years of the Plan. These projections are set forth in the accompanying Exhibit 3. The Debtor's personal living expenses are identified in Exhibit 4.

The projections are based upon a number of considerations. First the Debtor has owned and operated each of the properties prior to the commencement of this case. Even though the properties have not been rented through most of this case, the Debtor has extensive experience in renting these properties. The Debtor has researched the current market rental rates for comparable rental units in the area. He believes that the rates he has established for his properties are realistic and competitive. Similarly, Mr. Driggs has estimated the operating expenses based on prior history and current investigations into the costs. Mr. Driggs believes that the projections are realistic and fairly reflect the likely income and expenses for the operation of his business.

3990 Sunset currently rents at $750 and $895, and is being offered at $1,295for the third unit; these rates are consistent with prior rental rates.

3245 Hennepin is a 4-unit apartment building.   It is currently under construction.  For at least five years, before the fire damage, the building consisted of four single-bedroom units.  The renovation is converting the apartments into 2-bedroom units.  The former single bedroom units rented for $900 per month for the five years period before the damage.  The Debtor anticipates offering the 2-bedroom units for $1,150.  Mr. Driggs' projected income from this property is based on the history of renting single units for $900, and based on his survey of current rental rates in the Uptown neighborhood of Minneapolis, where the property is located.

2925 Casco is currently not rented, but is offered for rent at $3,000 per month.  The Debtor has attained that rate of rent previously, but on relatively short-term bases.

The anticipated use of 4400 Deering is different from the Debtor's prior use and substantially reflects a new business plan. In 2013, the Debtor tested the market, and was able to rent the facility for two separate weekends, once at $1,200 for two nights and once at $600 for one night.   Currently, the Debtor has rented this property for two weeks, for $2475 and a second week at $2675.   A third week has been reserved for $2,675 and a fourth week has been reserved for $3,500.   The Debtor has listed the property with Vacation Property by Owner, and is aggressively marketing the property for the Summer 2014 season for both vacation rentals and events.

Copies of the existing leases are available from the Debtor's counsel.


## 21.     WAIVER AND RELEASE

Confirmation of the Plan shall constitute a complete waiver and release of all claims of all creditors against the Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. §1141.  Confirmation of the Plan will bind creditors to accept payments and the promissory notes provided for in the Plan, and will oblige the Debtor to make payments to creditors as provided for in the Plan and the promissory notes provided for in the Plan.  Creditors holding judgments against the Debtor on account of or with respect to pre-petition claims shall not take any action to enforce such judgments.

The Debtor will move to re-open this case when the plan has been fully administered and the debtor has completed making the required plan payments and to move the court to grant him a discharge in accordance with 11 U. S. C. § 1141 (d) (5)

THE DEBTOR SHALL RECEIVE HIS DISCHARGE UPON COMPLETION OF PAYMENTS TO CLASS 1 CREDITORS.

TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE CODE, AND SUBJECT TO ANY EXCEPTION OR QUALIFICATION UNDER SUCH SECTION, THE DEBTOR WILL BE ENTITLED TO ENTRY OF AN ORDER PROVIDING FOR THE COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF

ALL CLAIMS AGAINST THE DEBTOR AS OF THE FILING DATE. THE
DISCHARGE WILL OPERATE TO RELEASE AND EXTINGUISH ANY
PURPORTED LIENS, ENCUMBRANCES, OR SECURITY INTERESTS CLAIMED
BY A CLAIMANT OR ANY OTHER ENTITY AGAINST PROPERTY OF THE
DEBTORS, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE
ESTATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN.
THE ORDER CONFIRMING THE PLAN IN A GENERAL ADJUDICATION AND
RESOLUTION WITH PREJUDICE OF ALL PENDING LEGAL PROCEEDING
AGAINST THE DEBTORS, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE
ESTATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

THE DISCHARGE AND THE ORDER CONFIRMING THE PLAN OPERATE AS AN
INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE
BANKRUPTCY CODE, AND ONLY TO SUCH EXTENT. ANY CREDITOR OR
EQUITY HOLDER ENTITLED TO RECEIVE ANY DISTRIBUTION PURSUANT TO
THIS PLAN WILL BE PRESUMED CONCLUSIVELY TO HAVE RELEASED THE
DEBTORS FROM ANY CLAIM RELATED TO THAT WITH RESPECT TO WHICH
THE DISTRIBUTION IS MADE. THIS RELEASE WILL BE ENFORCEABLE AS A
MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER
THAT ACQUIRES ANY RIGHTS TO DISTRIBUTION PURSUANT TO THIS PLAN.

SUBJECT TO ANY LIMITATIONS PROVIDED FOR IN THE BANKRUPTCY
CODE, OR OTHERWISE IN THE PLAN, UNLESS A TAXING AUTHORITY HAS
ASSERTED A CLAIM AGAINST THE DEBTORS BEFORE THE DEADLINE FOR
FILING CLAIMS, CONFIRMATION OF THE PLAN WILL OPERATE AS A
DISCHARGE OF ANY CLAIM OR LIEN OF ANY TAXING AUTHORITY
AGAINST THE DEBTORS, THE ESTATE, ANY PROPERTY OF THE DEBTORS,
AND ANY PROPERTY OF THE ESTATE, FOR ANY TAXES, PENALTIES, OR
INTEREST: (I) FOR ANY TAX YEAR FOR A PERIOD BEFORE THE FILING
DATE; (II) ARISING OUT OF THE FAILURE OF THE DEBTORS TO FILE ANY
TAX RETURN; OR (III) ARISING OUT OF AN AUDIT OF ANY TAX RETURN
WITH RESPECT TO A PERIOD BEFORE THE FILING DATE.

## 22. CONTINUING JURISDICTION OF THE COURT

The Court shall continue have and assert jurisdiction over the Debtor, parties and parties-
in-interest following confirmation in order to hear and determine claims objections,
adversary proceedings, and any other matter that may be properly be brought before the
court.

Respectfully submitted,

Dated:  April 23, 2014

Donald Andrew Driggs