UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In Re:

Donald Andrew Driggs

Chapter 11
Case No. 13-42355

Debtor.

OBJECTION TO THIRD MODIFIED PLAN

TO: Donald Andrew Driggs and Entities as Specified in Local Rule 3020-1(b),

JPMorgan Chase Bank, National Association, successor by merger to Chase Home Finance LLC successor by merger to Chase Manhattan Mortgage Corp., ("Chase") hereby objects to the confirmation of the Debtor's Third Modified Plan.

**INTRODUCTION**

Chase is the holder of a mortgage encumbering the property located at 4400 Deering Island, Orono, MN 55364 and legally described as:

Government Lot 9, Section 18, Township 117 North, Range 23 West of the Fifth Principal Meridian, Hennepin County, Minnesota (the "Mortgage").

The mortgage is dated March 20, 2003 and was recorded in the office of the Hennepin County Registrar of Titles on April 22, 2003 as Document No. 3723337 (the "Chase Mortgage"). (Chase Aff. ¶ 12, Exhibit C.) Chase filed a proof of claim indicating that the total amount due and owing under the note and the Chase Mortgage was $858,459.21. (Proof of Claim 13.)

# OBJECTION

1. The Court has jurisdiction over this Objection pursuant to 11 U.S.C. §§ 1128(b), 1129 and Federal Rules of Bankruptcy Procedure 3020.

2. Chase objects to the debtor's Third Modified Plan of Reorganization as it does not meet the requirements of 11 U.S.C. § 1129(b). More specifically, Chase objects to the plan treatment as follows:

   a. The value of the Property is $890,000.00. (Second Dobie Decl. ¶ 1.) The debtor provides a value of $490,000.00. (Third Mod. Plan, ECF No. 107, Class 5.) As the total payoff of the Chase Mortgage is now $911,420.34 (Chase Aff. ¶ 7), the secured claim of Chase should be $890,000.00.

   b. The interest rate on the loan is 5.5 percent per annum. (Chase Aff. ¶¶ 8, 12, Exhibit C.) The debtor provides the interest rate will be 4.25 percent per annum. (Third Mod. Plan, ECF No. 107, Class 5.)

   c. The proposed plan provides that the loan will be reamortized over 30 years and a balloon payment will be made on March 20, 2033. (Third Mod. Plan, ECF No. 107, Class 5.)

3. Chase further objects to the plan because the plan was not proposed in good faith in violation of 11 U.S.C § 1129(a)(3).

4. Chase further objects to the plan because the plan is not feasible as required by 11 U.S.C. § 1129(a)(11).

5. Chase further objects to the plan because the plan does not meet the best interests test of 11 U.S.C. § 1129(a)(7).

6. Chase further objects to the plan because upon information and belief there is no impaired accepting class as required by 11 U.S.C. § 1129(a)(10).

7. Chase further objects to the plan because the debtor has not devoted all of his disposable income as required by 11 U.S.C. § 1129(a)(15).

8. Chase further objects because there is no provision for payment of property taxes and insurance going forward.

9. Chase further objects because there is no provision for payment of the administrative expense priority claims for taxes and insurance payments incurred after the filing of the petition.

10. Chase further objects to the plan for its unsecured claim (if any) because the plan violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii).

## ARGUMENT

**I.  Chase believes its secured claim should be $890,000 and objects to the cramdown of its secured claim.**

*11 U.S.C. § 506.* Section 506(a)(1) of the Bankruptcy Code divides creditors' claims against a debtor into "secured" and "unsecured" claims based on the value of the underlying collateral. Harmon v. United States, 101 F.3d 574, 578 (8th Cir. 1996). Under § 506(a)(1), an allowed claim secured by a lien on the debtor's property "is a secured claim to the extent of the value of [the] creditor's interest in the estate's interest in such property . . . and is an unsecured

claim to the extent that the value of [the] creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1). Chase believes the value of the 4400 Deering Island property is $890,000.00. (Second Dobie Decl. ¶ 1.) In the debtor's 2008 chapter 11 case, the debtor first asserted that the 4400 Deering Island property was valued at $2,200,000.00. (Dobie Decl. ¶ 10.) Later, the debtor asserted and the Court agreed that the property was valued at $800,000. (Dobie Decl. ¶ 14.) The debtor has failed to provide the Court with any admissible evidence that the 4400 Deering Island property is now valued at $490,000.00 as the plan now suggests. As such, the Court should not confirm the plan.

*11 U.S.C. § 1129(b)(2).* The first cramdown requirement of 11 U.S.C. § 1129(b)(2)(A)(i)(I) requires that the secured creditor retain its lien. The plan does not specifically provide that Chase retains its lien, so Chase believes the plan must be amended to clarify that Chase's lien will be retained.

The second cramdown requirement in Section 1129(b)(2)(A)(i)(II) requires a debtor's plan to provide the secured creditor with deferred payments having a present value in the full amount of the creditor's secured claim. The debtor fails to comply with <u>Till v. SCS Credit Corp.</u>, 541 U.S. 465 (2004) in determining the proposed interest rate of the secured claim. <u>Till</u> provides that the starting point is the national prime rate of interest, and then the Court should add a risk adjustment. <u>Id.</u> at 479. The appropriate size of the risk adjustment depends on such factors as (1) the circumstances of the bankruptcy estate; (2) the nature of the security; and (3) the duration and feasibility of the reorganization plan. <u>Id.</u> The prime rate at the time of filing was 3.25 percent, and Chase believes that the contractual rate of 5.5 percent per annum adequately accounts for the risk of this loan given the debtor's prior bankruptcy and credit history.

The loan is due for the June 1, 2009, payment and thereafter. (Chase Aff. ¶ 9.) In the debtor's 2008 bankruptcy case, the debtor's confirmed plan provided an interest rate of 5.5 percent. (Dobie Decl. ¶ 15, Exhibit J.) The prime rate at the time of the 2008 petition and confirmation was 3.25 percent. For six years, the debtor has been unable to reorganize and produce rents sufficient to make the current payments. The debtor's plan of reorganization is not feasible as noted infra, § III. Thus, the contractual rate adequately accounts for the risk of default and Chase requests that the Court sustain Chase's objection to the interest rate cramdown.

**II.    The plan was not proposed in good faith in violation of 11 U.S.C § 1129(a)(3).**

Section 1129(a)(3) requires that the plan was proposed in good faith. Prior to the debtor filing the present bankruptcy petition, Chase had a foreclosure sale of the Property scheduled for May 8, 2013 at 11:00AM. (Dobie Decl. ¶ 4.) The debtor filed the present petition in the morning on May 8, 2013, to stop the sale. In the initial Disclosure Statement, the debtor acknowledged the petition was filed to stop the sale. (ECF No. 33, at 6.) At least two other foreclosure sales were pending for other properties at this time, and the debtor was playing games and using Minnesota Statute section 580.07, the postponement statute, in order to delay the foreclosures of the other two properties. CitiMortgage, Inc. had scheduled a foreclosure sale for the property located at 3990 Sunset Drive, Spring Park, Minnesota for January 22, 2013. (Dobie Decl. ¶ 5, Ex. A.) On January 4, 2013, the debtor executed and recorded an Affidavit of Postponement pursuant to Minnesota Statutes § 580.07 to postpone the sale five months. (Id.) In that affidavit, the debtor swore that the property was classified as a homestead under Minnesota Statutes section 273.124, and that he occupied the property as his homestead. (Id.) Less than three weeks later, on January 23, 2013, the debtor executed another Affidavit of Postponement, swearing that

the property located at 2925 Casco Point Road, Wayzata, Minnesota, was classified as homestead under section 273.124, and that he occupied this property as his homestead, in order to postpone the February 7, 2013, foreclosure sale scheduled for that property. (Dobie Decl. ¶ 6.) The debtor made false statements in each affidavit, under oath, regarding the homestead status and his occupancy at each property.

Neither property was classified as homestead for tax purposes under Minnesota Statutes section 273.124. (Dobie Decl. ¶¶ 7-8, Exs. C-D.) Thus, those statements were false and neither property was eligible for a five-month postponement by the debtor. Furthermore, the debtor has acknowledged that he lived at 3990 Sunset Drive, Apartment no. 3, Spring Park, Minnesota from November 2012 to the present. (ECF No. 11, at 32.) Thus, his sworn statement regarding his occupancy of 2925 Casco Point Road, Wayzata, Minnesota, on January 23, 2013, in the Affidavit of Postponement was false.

In December 2012, the debtor granted a security interest to an insider, his brother, A.J. Driggs, on "various boats" for a loan of $25,000, at 6% interest. (Third Am. Discl. Stat., ECF No. 106.) No proof of claim has been filed by A.J. Driggs. The boats have a value of $32,450 according to the debtor's Third Amended Disclosure Statement. (Id.) In the prior 2008 case, the debtor scheduled the value of one boat alone at $45,000. (Dobie Decl. ¶ 10, Case No. 08-41984, ECF No. 10, Schedule B.) This transaction is highly suspicious at best, and at worst, appears to be part of a scheme to protect the boats from creditors.

Finally, the debtor provides a yearly expense of $4800 for a boat slip on 3990 Sunset Drive in his "All Properties Total Projected Income & Expenses and Cash Flow" and the expenses for the 4400 Deering Island Property. In the income statement for the 3900 Sunset

Drive property, the debtor includes $700 in income from boat slips. The reason for the boat slip expense is not clear because he owns both properties. Because it appears as an expense on the All Properties calculation, it appears the debtor is using it to inflate his expenses.

The debtor's prior bankruptcy petition was filed on April 24, 2008 and was dismissed on June 19, 2012. The creditors involved in that case gave the debtor ample time to reorganize. Now, after several years, interest and holding costs have depleted all of the equity in Chase's claim. Only now, does the debtor assert that the Property is worth substantially less than what is owed. After several creditors decided to foreclose, the debtor began playing games with the Minnesota postponement statute, and filed the present petition on May 8, 2013, the morning of Chase's foreclosure sale, in order to stop the sale.

### III. **Chase objects to confirmation because the plan is not feasible.**

Chase objects to the plan because the plan is not feasible. Chase believes the plan is likely to be followed by a liquidation and further reorganization and the plan is not feasible as required by 11 U.S.C. § 1129(a)(11). Past performance is a generally accepted factor to consider in determining the reliability of future projections. In re Am. Consol. Transp., 470 B.R. 478, 490 (Bankr. N.D. Ill. 2012). The Tenth Circuit B.A.P. has stated: "A glaring discrepancy between the facts surrounding past performance and activity and predictions for the future is strong evidence that a debtor's projections are flawed and the Plan is not feasible." Id. (quoting F.H. Partners, L.P. v. Inv. Co. of the Sw., Inc. (In re Inv. Co. of the Southwest, Inc.), 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006) (internal quotation marks omitted). The debtor claims that "[t]he anticipated use of the Property is different from the Debtor's prior use and substantially reflects a new business plan." (Third Am. Discl. Stat., ECF No. 106 at 23.) Whether it is a new business plan or a

rehashed version of the prior hospitality business plan, the plan is nonetheless based on pure speculation and is likely to be followed by a liquidation or need for further reorganization.

The debtor's prior chapter 11 petition from 2008 was dismissed in 2012. That plan was followed by a need for further reorganization (this case). During and since that case, the debtor has failed to bring in the rental income that he projected in his previous plan ($14,400). In the debtor's 2008 bankruptcy case, the debtor proposed and argued that the Property would be used in his hospitality business. After Chase moved for relief, the debtor filed a response suggesting that the Property would be used for the debtor's hospitality business and that it could generate $2,000 per week as a vacation rental during the 12-week summer season for a total of $24,000. (Dobie Decl. ¶ 12, Case No. 08-41984, Resp. to MFR, ECF No. 113.) The debtor argued this $24,000 seasonal income was $10,000 more than the debtor's conservative projections of income of $1,200 per month rent or $14,400 per year. (Id.) The debtor also argued that the debtor believed he could obtain a zoning change to allow for 60 boat slips on the property at a value of $5,000 per slip. (Id.) Despite these assertions and representations, the Court granted Chase's motion for relief because the projections were speculative at best. (Dobie Decl. ¶ 13, Case No. 08-41984, Order dated Dec. 9, 2008, ECF No. 120.)

There are no boat slips now. The debtor's monthly operating reports from the start of this case to present show that the debtor has earned rent receipts of $1,200.00 on August 26, 2013 (ECF No. 113) and $680 on March 17, 2014 (ECF No. 113). The debtor estimates that the Property will have six events each year resulting in income of $48,000 as well as 10 weeks of rentals at an average of $2,600 per week, for a total of $74,000 in rental income in year one. (ECF No. 106, Section 8.) But there is no evidence of any event rental income. Unfortunately,

the debtor has been unable to create the hospitality and event rental business over the past six years. There is nothing in the record to suggest that will change now.

Finally, if Chase's secured claim is determined to be $890,000 (or the entire amount of its proof of claim), there is not enough income to pay the Chase mortgage. Thus, because the debtor's intended use of the property is purely speculative and not feasible, reorganization with the 4400 Deering Island property is not feasible.

## IV.  Chase objects to the plan because the plan does not meet the best interests test of 11 U.S.C. § 1129(a)(7).

Under 11 U.S.C. § 1129(a)(7)(ii), each dissenting creditor must receive at least as much as they would in a hypothetical liquidation. Because the plan does not provide Chase with the present value of $890,000 (Dobie Decl. ¶ 2), Chase believes the plan does not satisfy the best interests test.

## V.  Chase objects to the plan for its unsecured claim because the plan violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii).

Chase believes that the classification of claims and the debtor's retention of pre-petition property violates the absolute priority rule of 11 U.S.C. Every unsecured creditor must be paid in full before a debtor can retain "any property" under a plan.  11 U.S.C. § 1129(b)(2)(B)(ii); see also Ice House Am. LLC v. Cardin, No. 13-5764, ___ F.3d ___, (6th Cir. May 13, 2014). The Third Modified Plan of Reorganization provides that Class 8 is unimpaired and that all other classes are impaired, including the unsecured claims. According to the debtor's Amended Schedules, the debtor has assets that he has not addressed in his plan. The debtor intends to retain his interests in various businesses including Black Lake LLC, which he valued at $50,000, One Mile Long LLC, which he valued at $1,000, and Regal One LLC, which he valued at

$1,200. (Docket No. 40.) Thus, it appears that he will retain a significant amount of property in violation of the absolute priority rule.

JPMorgan Chase Bank National Association requests that the Court deny approval of the Third Modified Plan.

Dated:    July 2, 2014                     USSET, WEINGARDEN & LIEBO, P.L.L.P.

                                           By:    /s/ Kevin T. Dobie
                                                  Kevin T. Dobie #388322
                                                  Attorney for Creditor
                                                  4500 Park Glen Road, #300
                                                  Minneapolis, MN 55416
                                                  (952) 925-6888

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In Re:

Donald Andrew Driggs

Chapter 11
Case No. 13-42355

**DECLARATION OF
KEVIN T. DOBIE**

Debtor.
_____

I, KEVIN T. DOBIE, under the penalty of perjury states as follows:

1.  Attached as <u>Exhibit A</u> is a true and correct copy of JPMorgan Chase Bank, National Association's appraisal of real property legally described as Government Lot 9, Section 18, Township 117 North, Range 23 West of the Fifth Principal Meridian, Hennepin County, Minnesota, and located at 4400 Deering Island, Orono, Minnesota.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:  July 2, 2014

By:  /s/ Kevin T. Dobie
Kevin T. Dobie #388322
Attorney for Creditor
4500 Park Glen Road, #300
Minneapolis, MN 55416
(952) 925-6888

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

In Re:

                                                    Chapter 11

Donald Andrew Driggs                            Case No. 13-42355

                  Debtor.

---

UNSWORN DECLARATION FOR PROOF OF SERVICE

---

I, Darren A. Kachan, employed on this date by USSET, WEINGARDEN, & LIEBO, PLLP attorney(s) licensed to practice law in this court, with office address of 4500 Park Glen Road, Suite 300, Minneapolis, Minnesota 55416, upon penalty of perjury, declares that on July 2, 2014, I served the annexed **Objection to Third Modified Plan**, via first class mail postage prepaid, upon each of the entities named below:

Donald Andrew Driggs
P.O. Box 405
Spring Park, MN 55384

Douglas Stone
H & R Block
6312 Minnetonka Blvd.
St. Louis Park, MN 55416

A.J. Driggs
12135 13th Street NW
Spicer, MN 56288

And delivered by email notification under CM/ECF on the day e-filed with the court to each of them as follows:

Sarah J. Wencil, Esq., Office of the United States Trustee

Joseph W. Dicker, Attorney for Debtor

Thomas Flynn, Attorney for Debtor

                                                                 /s/ Darren A. Kachan
                                                                     Darren A. Kachan