UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re:

| | |
|---|---|
| DONALD ANDREW DRIGGS, | ORDER RE: ISSUES ON CONFIRMATION OF DEBTOR'S THIRD MODIFIED PLAN |
| Debtor. | |
| | BKY 13-42355 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

At St. Paul, Minnesota
August 22, 2014.

A hearing on confirmation of the Debtor's third modified plan is set to convene on August 25, 2014, as continued from July 9, 2014. As of Thursday, August 21, the Debtor's counsel had not filed a report on ballot tabulation.[1]

A review of ballots cast by the close of business on August 21 showed that all classes of creditors that had cast ballots, *but one*, had rejected the plan. This includes the class of unsecured creditors--as to which the only cast votes would be those deemed to the unsecured components of the claims of four creditors with claims secured by real estate mortgages, asserted by the Debtor to be subject to bifurcation under 11 U.S.C. §§ 506(a)(1) and 506(d) on account of their allegedly-undersecured status. The ballot tabulation [Dkt. No. 168] belatedly filed by the Debtor's counsel (9:07 a.m., August 22) acknowledges the outcome of the vote; and it tacitly bears out the conclusion.[2] No "purely" unsecured claimant cast a vote. If the Debtor's asserted factual

---

[1] This probably should have been done by July 8, under the deadline originally set by order [Dkt. No. 118]--regardless of the fact that the Debtor's motion for a continuance had been granted on July 2. In any event, dating five days back from the new date of the confirmation hearing, August 20 was the very last day on which the report would have been due.

[2] Counsel engages in one finessing; he states in a footnote: "No ballots form [sic] holders of Class 7 Unsecured Claims were received. The report does not allocate the unsecured portion of any otherwise secured claims." This apparently is a rationalization for the recitation of "0" acceptances or rejections by creditors within Class 7. There is no stated rationale for the non-"allocation," i.e., the exclusion from the tally for Class 7, of the rejecting ballots cast by the holders of such claims.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *08/22/2014*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

predicates for bifurcation are borne out by evidence, about $1.35 million of unsecured claims would be assigned to the four mortgagee-creditors.

One vote of acceptance was cast, that of First National Bank of the Lakes. This party is the sole creditor named in Class 6 and is identified there as a secured creditor. That vote would be the only means for the Debtor to satisfy the requirement of 11 U.S.C. § 1129(a)(10):

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

A serious issue is raised, however, by the vote of this creditor, the described nature of its claim, and the proposed treatment of its claim. It arises under binding precedent under § 1129(a)(10), *In re Windsor on the River Assocs., Ltd.*, 7 F.3d 127 (8th Cir. 1993). The claim in question is assigned a value of $5,631.45. The proposal is to "reinstate FNBL's note"--the active verb of which suggests that perhaps the claim is *not* to be impaired--and then to make payments of $200.00 per month before a final balloon payment. The claim itself is tiny against the balance of the debt structure treated under the plan. There is no means in the whole case record to gauge how much the creditor's prepetition rights are to be altered; and in any event, it appears that it is to get its full contractual due in money.[3]

This issue could not have arisen until a vote was taken after solicitation, and it is not fully ripe until a confirmation hearing is convened. Thus, the parties that previously (in June) objected to confirmation--all four mortgage-secured creditors that held the five claims the Debtor would subject to write-down and reamortization--are not at fault for not having raised it to date.

---

[3] First National Bank of the Lakes did not file a proof of claim, and a copy of any original note or security agreement do not appear elsewhere in the record. The Debtor did not even schedule a corresponding claim for this creditor in his initial filings.

On the current state of the record, however, the issue is squarely posed. By its language of mandate,[4] § 1129(a) imposes the burden on the proponent of a plan to satisfy all elements for confirmation in the first instance. So, the Debtor is properly held to addressing this issue square-on, whatever the status of previously-filed objections. This is particularly appropriate where, as here, a debtor offers the acceptance by a single creditor holding a claim of small magnitude in his overall debt structure, as the only footing in consent for a proposal to substantially alter much, much larger secured claims over their holders' objection. *In re Windsor on the River Assocs., Ltd.*, 7 F.3d at 133 (where proposed alteration of claims of small number of creditors in small total amount appears to have been made "to ensure approval by at least one 'impaired' class as required by [§] 1129(a)(10)," confirmation must be denied where debtor does not present "plausible alternative explanation" for treatment).

The Debtor will have to defend his usage of this treatment. He will have to show that he was without discretion in the way he set up the restructuring of this claim. 7 F.3d at 132. Relevant considerations will go to the identity, condition, and value of the alleged security for this claim; the prepetition rights of the creditor; the necessity of the collateral to an ongoing, post-confirmation business operation; and the ultimate feasibility of any operation in which the collateral would be used.[5] Alternate possible treatments of the claim will be relevant to this inquiry--in particular any prospect that the Debtor could pay off the claim in full now, or in the near future, from current resources. *Id.*

---

[4]"The court shall confirm a plan *only if all* of the following requirements are met . . ." (emphasis added).

[5]The Debtor's disclosure statement is very vague as to the model, condition, and features of the boat in question, which (with two trailers) is apparently the sole collateral for this claim. There is no disclosure as to the basis for the value assigned to these items, $6000.00 per the disclosure statement and $6500.00 per the plan.

IT IS THEREFORE ORDERED that the Debtor shall be prepared to address the issue framed in this order as a threshold matter of fact and law, as soon as the hearing on confirmation of his third modified plan is convened on August 25, 2014.

BY THE COURT:

*/e/ Gregory F. Kishel*

_____
GREGORY F. KISHEL
CHIEF UNITED STATES BANKRUPTCY JUDGE